# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TATAYANA MOORE, | |
| *and* | CASE NO: 1:18-CV-1849 |
| DANIEL PERSTIN, | |
| | JUDGE: JAMES S. GWIN |
| *and* | |
| NICOLE RUSSELL, | |
| *and* | |
| JORDAN MARKEY, | |
| *and* | **FIRST AMENDED COMPLAINT** |
| ANTHONY BURDETTE, | (Jury Trial Demanded) |
| *and* | |
| THOMAS MCGERVEY, | |
| *and* | |
| JAMES JOHNSON, | |
| *and* | |
| JONATHON BELLOMY, | |
| *and* | |
| ERICA JOHNSON, | |
| *and* | |
| BRANDON CHAPPELL | |
| *and* | |

| | |
|---|---|
| **HARRY SYKES** | : |
| | : |
|     **PLAINTIFFS,** | : |
| | : |
|     v. | : |
| | : |
| **THE CITY OF CLEVELAND,** | : |
| | : |
|     *and* | : |
| | : |
| **MICHAEL MCGRATH,** | : |
| **In his individual and official capacities.** | : |
| | : |
|     *and* | : |
| | : |
| **SHAWN SMITH,** | : |
| **In his individual and official capacities.** | : |
| | : |
|     *and* | : |
| | : |
| **MATTHEW GALLAGHER,** | : |
| **In his individual and official capacities.** | : |
| | : |
|     *and* | : |
| | : |
| **GEORGE KWAN.** | : |
| **In his individual and official capacities.** | : |
| | : |
|     **DEFENDANTS.** | : |

Now come Plaintiffs Tatayana Moore, Daniel Perstin, Nicole Russell, Jordan Markey, Anthony Burdette, Thomas McGervey, James Johnson, Jonathon Bellomy, Erica Johnson, Brandon Chappell, and Harry Sykes, by and through undersigned counsel, and for their First Amended Complaint against Defendants the City of Cleveland (the "City"), Michael McGrath, Shawn Smith, Matthew Gallagher, and George Kwan state as follows:

## INTRODUCTION

1. Contrary to everything the Cleveland Police Academy should stand for, these Plaintiff-recruits have been wrongly held to a standard of **"guilty until proven innocent."**

2. Even when proven innocent, these Plaintiffs were still terminated and their promising careers destroyed so the City, and its employees and directors, could save face and attempt to cover up for its hasty investigation and disciplinary decision.

3. Plaintiffs are former Cleveland Police recruits who are committed to careers of public and community service in a dangerous and often-underappreciated industry. Plaintiffs have lived lives of public service, spent many hours of hard work and attended the Cleveland Police Academy with the goal of graduating to serve their community as Cleveland Police Officers.

4. Plaintiffs have now been publicly and permanently branded cheaters by the City.

5. Plaintiffs were not accused of cheating on a test or exam, but rather accused, at most, of sharing a couple pages of notes in a notebook that contained hundreds of pages.

6. Plaintiffs were told by their instructors they could share notes.

7. Each recruit was <u>required</u> to copy notes <u>verbatim</u> from slides that were presented in class.

8. Even when clear evidence exonerated or mitigated all allegations of academic dishonesty against Plaintiffs, the City doubled-down on its position and terminated Plaintiffs' employment.

9. Plaintiffs include not only a diverse group of women and African-Americans, that the Department of Justice found to be underrepresented in the Cleveland Police force, but also military veterans, paramedics, public servants, and students who consistently scored at the top of their class in the Cleveland Police Academy.

10. The City's "cheating investigation" that led to the termination of 15 recruits disproportionately targeted and affected African-American recruits. 10 of the 15 African-

American recruits enrolled in the 65-student academy were terminated as a result of these allegations.

11. The City not only targeted Plaintiffs for termination – they publicly labeled these young men and women as cheaters.

12. The City ended these Plaintiffs' careers as police officers, including any potential to serve as a police officer in other jurisdictions, before they ever had a chance to start.

## PARTIES

13. Defendant City of Cleveland (the "City") is a government entity located in Cuyahoga County.

14. Defendant Michael McGrath is the Safety Director of the City and who, while acting under color of state law and/or pursuant to governmental policy or custom of the City, deprived Plaintiffs of rights secured or protected by the U.S. Constitution.

15. Defendant Shawn Smith is a Sergeant in the Cleveland Police and the Commander of the Cleveland Police Academy. Defendant Smith, while acting under color of state law and/or pursuant to governmental policy or custom of the City, deprived Plaintiffs of rights secured or protected by the U.S. Constitution.

16. Defendant Matthew Gallagher is a Lieutenant in the Cleveland Police. Defendant Gallagher, while acting under color of state law and/or pursuant to governmental policy or custom of the City, deprived Plaintiffs of rights secured or protected by the U.S. Constitution.

17. Defendant George Kwan is a Cleveland Police Officer. Defendant Kwan, while acting under color of state law and/or pursuant to governmental policy or custom of the City, deprived Plaintiffs of rights secured or protected by the U.S. Constitution.

4

18. Plaintiffs are former Cleveland Police Academy recruits residing in Cuyahoga County at all times relevant.

19. Plaintiffs are former employees of the City of Cleveland, who were terminated by the City of Cleveland.

20. The investigation into academic dishonesty that led to the termination of Plaintiffs was conducted by the City of Cleveland and/or the City of Cleveland's employees.

21. At the time of their termination, Plaintiffs had completed the City's probationary period, outlined in Section 6.80 of the Cleveland Civil Service Rules and were non-probationary employees.

22. At all times relevant to this complaint, the City acted by and through its agents, servants, employees and representatives who were working in the course and scope of their respective agency or employment and/or in the promotion of Defendant's business, mission and/or affairs.

## JURISDICTION AND VENUE

23. Plaintiff invokes this Court's original jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

24. Venue in this action is proper under 28 U.S.C. § 1391. The Defendant is a resident of the State in which this district is located and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

### Cleveland's Police Academy

25. To work as a Cleveland Police Officer, an applicant must be accepted into and complete the Cleveland Police Academy (the "Academy") or a similarly-accredited academy, which

completion includes passing the "Ohio Peace Officer's Training Academy Test" (the "Test").

26. Plaintiffs were hired as full-time law enforcement employees by the City on or before February 5, 2018, the day they began the Academy.

27. The Academy is required to teach to and meet Ohio's standards and curriculum but in all other respects it is controlled by the City, including its location, hours, selection of instructors, operating costs, and disciplinary oversight.

28. The "Rules and Regulations" of the Academy were developed, implemented, and enforced by the City, including the rule on "Cheating/Plagiarism."

29. Defendant pays the salary of Academy commander, Sergeant Shawn Smith, for his service at the Academy.

30. Both Plaintiffs and Defendant were subject to rules and restrictions outlined in the "Cleveland Police Academy Recruit Rules & Regulations" and the "Rules of the Civil Service Commission City of Cleveland."

**The Licensing Test**

31. Recruits in Plaintiffs' 2018 class at the Academy took the Test on August 16, 2018 in Richfield, Ohio.

32. Despite Plaintiffs' requests, by and through counsel, to take the 2018 test, they were not permitted to take the test.

33. Once Plaintiffs were held out of the August 16, 2018 test, they would have had to redo the Academy before they could sit for another administration of test.

**The Notebook Requirement**

34. Each recruit at the Academy is required to maintain a notebook that is subject to inspection. (the "Notebook"). The Notebook is required to contain appropriate entries of pertinent material covered during the classroom sessions of the basic course. Among the factors on which the Notebook is evaluated are: sufficiency of course content, organization, appropriateness of material, regularity of entries, neatness, accuracy and legibility.

35. Large parts of the of content in each Plaintiff's Notebook were classroom notes taken from PowerPoint slides that contained "Student Performance Objectives" ("SPO") and which students were instructed to copy verbatim. For example:

| SPO 3: Define the term "Probable Cause." | The facts and circumstances which would lead a reasonable person to believe that a condition exists that justifies the action to be taken. |
|---|---|

36. If a recruit did not copy a SPO verbatim, it would be incorrect.

37. Pursuant to the Cleveland Police Academy Recruit Rules and Regulations 2.05:

> Failure to [maintain a satisfactory notebook or pass the Test] shall constitute neglect of duty, unsatisfactory performance and preclude certification by the Ohio Peace Officer Training Commission and shall be a bar to receiving permanent appointment as a Peace Officer.

38. Plaintiffs' Notebooks were failed because they were determined to contain plagiarized work.

39. Plaintiffs created and maintained their own individual Notebooks.

**Rules And Procedures On Academic Honesty**

40. Throughout the six-month Academy, Plaintiffs were repeatedly instructed to work together with other recruits, help other recruits who were struggling academically, problem solve collaboratively, and "leave no recruit behind."

7

41. Plaintiffs were told explicitly by instructors to work together on a "LEADS test."

42. Plaintiffs were verbally encouraged by their instructors to share notes.

43. Instructors emailed recruits notes to share and copy on multiple occasions.

44. The only instructions Plaintiffs were ever given with regard to cheating/plagiarism is "do not take SPOs from Quizlet or LAWriter."

45. Recruits are not evaluated on typing or transcription skills at the Academy.

46. The Academy has no requirement that recruits must hand type the notes themselves.

47. Plaintiffs were also aware of the Cleveland Police Academy Recruit Rules and Regulations which prohibited cheating and plagiarism:

    > Any form of cheating or representing another's work as your own will not be tolerated. When substantiated, information of cheating or misrepresentation by a recruit will be the subject of an investigation and recommendation that disciplinary action be taken.
    >
    > The investigating supervisor shall recommend charges on the offending recruit/recruits as cheating indicates that the individual is lacking the honesty and integrity required by this position of public trust.

48. Plaintiffs followed their instructors, supervisor(s), and commander(s), direction at all times in the performance of their academic requirements, including the preparation and maintenance of their Notebooks.

### The "Cheating Scandal"

49. In early July 2018, a recruit ("R.Y.") accessed and copied from another student's electronic notes without permission.

50. Upon being discovered, R.Y. admitted to cheating in violation of the Cleveland Police Academy Rules and Regulations.

51. Thereafter, upon information and belief, in an effort to sabotage those individuals for whom R.Y. had a personal dislike or animus, R.Y. sent an anonymous message to a supervisor at the Cleveland Police Academy implicating 33 classmates in a larger cheating scandal.

52. After receiving the "anonymous message," the Academy confiscated the Notebooks of all students under the auspice of conducting a cheating/plagiarizing investigation.

53. The Academy personnel did not review the entirety of every confiscated Notebook.

54. The Academy did not use any software system to check for plagiarism or cheating.

55. All but 15 recruits implicated in the "cheating scandal" were cleared of the allegations, had their Notebooks returned, and was permitted to take the Test. Some students were "cleared" almost immediately.

56. Some students, not including Plaintiffs, were allowed to redo parts of their Notebooks following the Notebook confiscation.

57. Plaintiffs are unaware of any protocol, standards, or criteria by which the Academy investigated the cheating allegations or how some students were apparently cleared.

58. Prior to being excluded from the licensing test, Plaintiffs were not provided any details of the allegations against them and were unaware of what it they were alleged to have done wrong.

59. The investigation into Plaintiffs' alleged cheating was conducted entirely by the City and all disciplinary actions taken were levied entirely by the City.

**Plaintiffs Are Advised Of Their Imminent Termination Before Their "Pre-Disciplinary" Hearing**

60. On August 3, 2018, Plaintiffs met with Academy Commander Sergeant Shawn Smith. Smith advised Plaintiffs that they would be excluded from the Test and their employment would thereafter be terminated.

61. Also, on August 3, 2018, Plaintiffs met with Commander Deirdre Jones who advised them explicitly that they would be excluded from the Test and their employment would thereafter be terminated.

62. On or about August 6, 2018, Plaintiffs met with Sergeant Melissa Dawson, the Officer-in-Charge of the Employee Assistance Unit who advised them explicitly that they would be excluded from the Test and their employment would thereafter be terminated and that they should prepare for a career outside the Cleveland Police Department.

63. In an August 9, 2018 Cleveland Plain Dealer news article, Cleveland police spokeswoman Jennifer Ciaccia is quoted for the proposition that the 15 recruits "will be held out of the Aug. 16 Ohio Peace Officer's Training Academy test." Officer Ciaccia is further quoted that "the investigation into the recruits is on-going and could take some time for internal affairs investigators to finish. No disciplinary actions have been taken against the recruits, she said, and none of have resigned."

64. All of Defendant's actions and statements described previously in this Complaint were undertaken before Plaintiffs were advised of any details of what they were alleged to have done.

65. Pursuant to Cleveland's Civil Service Commission, once the probationary time period elapsed, Plaintiffs are only able to be discharged "for cause." Civil Service Commission 6.80(D).

66. Pursuant to Cleveland's Civil Service Commission:

> [w]hen any disciplinary action is contemplated as to an officer or employee in the classified service, the appointing authority or the secretary of a board or commission in the City service, shall give such officer or employee oral or written notice of the action contemplated and an opportunity to respond.

> 9.20(A).

**The "Pre-Disciplinary Hearings"**

67. Plaintiffs were provided pre-disciplinary hearings (the "Hearings") during the week of August 20, 2018.

68. Defendants had already determined to terminate Plaintiffs regardless of what would have been presented at the Hearings.

69. The City was represented at the Hearings by its employees including Officer George Kwan, Lieutenant Matthew Gallagher, and Sergeant Shawn Smith.

70. Officer George Kwan presented the evidence against Plaintiffs on behalf of the City.

71. Prior to the Hearings, Plaintiffs, counsel, and their Union requested all the evidence that would be presented against the Plaintiffs at their hearings.

72. Plaintiffs were not provided all evidence against them prior to the Hearings.

73. At the Hearings, Defendant repeatedly presented new evidence that had not previously been made available to Plaintiffs, their counsel, or their Union.

74. During the hearing, Defendant admitted that it was "still gathering" evidence against Plaintiffs in the days leading up to the hearing.

75. At the hearings, at least two recruits testified to using another recruit's work without his or her knowledge or permission.

76. Plaintiffs include those recruits whose work was used with their knowledge or permission.

77. Plaintiffs whose work was used without their knowledge or permission learned for the first time *at the hearings* that their work had been used without their permission.

78. At the hearings, many Plaintiffs presented their handwritten notes from which their notebooks were created.

79. Many Plaintiffs had stacks of handwritten notes thicker than a phone book.

80. One of the bases for terminating Plaintiffs was what Officer Kwan referred to as "ghost punctuation."

81. Officer Kwan admitted that "ghost punctuation" was a concept he had made up, that he has no formal training or expertise in linguistics or investigations into academic dishonesty, and conceded that "experts might disagree."

82. Following the Hearings, and without differentiation or regard to the evidence, all 15 individuals held out of the licensing test – including all 11 Plaintiffs – were summarily fired.

83. On or about September 17, 2018, the City released termination letters for each Plaintiff to media outlets. These letters falsely labeled each Plaintiff as a cheater and confirmed that each Plaintiff was terminated for cheating and/or failing to come forward to admit to cheating.

**Plaintiffs Are Victims Of Cleveland's Unwillingness To Admit It Made A Mistake In Punishing Plaintiffs Before It Held A Pre-Disciplinary Hearing**

84. The City made a knee-jerk reaction in refusing to allow Plaintiffs to take the state licensing exam before it even told them about the allegations, let alone have a chance to contest those allegations.

85. By its own admission, the City had not completed its investigation at the time it held Plaintiffs out of the Test.

86. The act of denying Plaintiffs the ability to take the licensing test constituted punishment.

87. Rather than face liability for prematurely imposing punishment, the City determined it was easier to terminate these Plaintiffs.

88. These Plaintiffs have been sacrificed to the city's self-preservation.

89. The City will not accept Plaintiffs back into the Academy.

90. Defendant's actions have foreclosed, not only careers in law enforcement for Plaintiffs, but public service in general.

91. The City publicly accused Plaintiffs of cheating, released their names to the media, and accused these recruits of cheating in public records that the City knew or should have known would be widely and permanently disseminated by the media.

92. Defendant's actions in terminating Plaintiffs have nullified the six months they committed to Academy training. During this time, Plaintiffs endured physical and mental abuse (including being pepper sprayed) similar to a military boot camp. Plaintiffs also endured the stress and anxiety of the competitive academy and the untold hours they spent in classrooms and studying.

93. Plaintiffs will forever be branded as "cheaters" by members of law enforcement and the general public, who do not know the facts of their case.

94. Moreover, Plaintiffs' termination could operate as a permanent bar from a career as a peace officer. Cleveland Police Academy Recruit Rules and Regulations 2.05; *see supra* ¶ 15.

95. The present and future harm to Plaintiffs is made more injurious by the extremely arbitrary and capricious nature by which it was inflicted – merely to attempt and mitigate the City's liability.

96. Defendant imposed a punishment – excluding Plaintiffs from the licensing exam – when it publicly claimed an investigation was on-going and could take some time. (Cleveland Plain Dealer 8/9/18).

97. Defendant's actions are in violation of Plaintiffs' Due Process rights under the Ohio and U.S. Constitutions.

### COUNT ONE: DUE PROCESS CLAIMS UNDER FEDERAL AND OHIO CONSTITUTION
### (All Plaintiffs Against All Defendants)

98. Plaintiffs repeat and incorporate all the preceding allegations of this Complaint, as if fully set forth herein.

99. The Fifth Amendment to the United States Constitution, made applicable to the State of Ohio by the Fourteenth Amendment, provides that no person shall "be deprived of life, liberty, or property, without due process of law." The Fourteenth Amendment to the United States Constitution provides that no state shall deprive "any person of life, liberty, or property, without due process of law."

100. Sec. 16, Article I, Ohio Constitution, guarantees that every person injured in his lands, goods, person or reputation shall have remedy by "due course of law."

101. The Due Process Clauses of the Ohio and United States Constitutions are implicated by municipal employee disciplinary decisions. The City of Cleveland has a constitutional obligation to provide a fundamentally fair and reliable hearing process. Plaintiffs were entitled under the constitutions of Ohio and the United States to the opportunity to be heard in a meaningful manner before being subjected to *de facto*, constructive, and actual disciplinary action.

102. The Due Process Clauses of the United States and Ohio Constitutions apply to municipal investigation procedures and disciplinary decisions, including academic dishonesty investigations that have the potential to result in loss of reputation, employment, or status.

103. Defendants McGrath, Smith, Gallagher, and Kwan ("Individual Defendants"), through their exercise of state action, had an obligation to provide a fundamentally fair and reliable investigation and disciplinary processes when affecting Plaintiffs' liberty and property

14

interests, and that fundamentally fair and reliable investigation and disciplinary processes must meet constitutional due process requirements.

104. As the subjects of an academic dishonesty investigation and disciplinary process, Plaintiffs were entitled under the Constitution of the United States to have adequate notice of the charges affecting their reputation and livelihood, and to be heard in a meaningful manner in the course of the investigation, before the results of the investigation were determined and disseminated publicly.

105. Due process requirements also entitled Plaintiffs to a meaningful opportunity to respond to the conclusions reached in any such investigation, particularly as the Individual Defendants were keenly aware that the investigation and disciplinary results were going to be made available to the public and would have a harmful effect on Plaintiffs' reputation, future employment, and other fundamental privileges. Plaintiffs have a constitutionally protected liberty interest in their good name and reputation.

106. Through policies, practices, and procedure of the City, Plaintiffs have a constitutionally protected property interest in their employment by the City.

107. The City and Individual Defendants failed to provide any of these procedural and substantive due process requirements to Plaintiffs in the course of the investigation and discipline or before the subsequent publication of the results of the investigation.

108. The City and Individual Defendants engaged in the repeated subsequent dissemination of stigmatized information as detailed in this Complaint. By doing so, the City and Individual Defendants, individually and through their authorized agent, publicized additional false and stigmatized statements impugning Plaintiffs' honesty and morality. These statements included, but are not limited to, those identified earlier in this Complaint.

109. The City and Individual Defendants acted under color of law in violating Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution. The City and Individual Defendants acted intentionally and with callous disregard for Plaintiffs' clearly established constitutional rights.

110. The City and Individual Defendants disregarded incontrovertible evidence that established the outright innocence or mitigation of culpability of Plaintiffs and carried out punishment that impugned Plaintiffs reputation and ability to secure future employment to avoid liability for a mishandled investigation.

111. The City and Individual Defendants targeted African-American recruits in its academic dishonesty investigation and punished African-American recruits in a much more severe manner than non-African-American employees that had been accused of similar actions of dishonesty in the past.

112. The City and Individual Defendants' actions as detailed above are so unjust that it shocks the conscience.

113. As a direct and proximate result of the City and Individual Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have suffered severe and substantial damages, including lost earnings, diminished earnings capacity, lost career opportunities, litigation expenses including attorneys' fees, loss of reputation, humiliation, embarrassment, mental and emotional anguish and distress and other compensatory and punitive damages, in an amount to be determined by a jury and a court.

114. Pursuant to 42 U.S.C. § 1983, the City and Individual Defendants are liable to the Plaintiffs for Plaintiffs' damages, and Plaintiffs are entitled to recover their attorneys' fees and costs incurred in bringing this action.

**COUNT TWO: RACE DISCRIMINATION IN VIOLATION OF OHIO REV. CODE § 4112.02**
**(Plaintiffs Moore, Burdette, James Johnson, Erica Johnson, Chappell, and Sykes Against Defendant The City of Cleveland)**

115. Plaintiffs repeat and incorporate all the preceding allegations of this Complaint, as if fully set forth herein.

116. Plaintiffs Moore, Burdette, James Johnson, Erica Johnson, Chappell, and Sykes are African-American.

117. Throughout Plaintiffs Moore, Burdette, James Johnson, Erica Johnson, Chappell, and Sykes' employment with the City, they were fully competent and qualified for their positions.

118. The City has a documented history of failing to hire African-American police officers to serve the community.

119. The City has a documented history of lacking diversity in its police force that does not reflect the diversity in the population of the City of Cleveland.

120. Due to the documented history of failing to hire African-American police officers and resisting efforts to diversify the police force, the City was mandated to hire a more "diverse group of applicants" in the Consent Decree between the City and the United States Department of Justice.

121. The 2018 Cleveland Police Academy was made up of only 15 African-American recruits out of a class of 65 total recruits.

122. The number of African-American recruits in the 2018 Cleveland Police Academy was in no way proportionate to the percentage of African-American citizens of the City of Cleveland.

17

123. Two-thirds of African-American recruits in the 2018 Cleveland Police Academy were falsely accused of cheating and academic honesty.

124. 10 out of 15 African-American recruits in the 2018 Cleveland Police Academy were told that they would be fired before an investigation into allegations of cheating and academic dishonestly was even complete.

125. 10 out of 15 African-American recruits had their employment from the City terminated even though evidence was presented that established the outright innocence or mitigation of culpability of any allegations of cheating and academic dishonesty.

126. The City targeted African-American recruits in its academic dishonesty investigation and punished African-American recruits in a much more severe manner than non-African-American employees that had been accused of similar actions of dishonesty in the past.

127. Pursuant to Ohio Rev. Code § 4112.02(A), it is an unlawful discriminatory practice to "discharge without just cause, to refuse to hire, or otherwise discriminate against [an employee] with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment" based on that employee's race.

128. The City violated Ohio Rev. Code § 4112.02(A) by discriminating against Moore, Burdette, James Johnson, Erica Johnson, Chappell, and Sykes due to their race.

129. As a direct and proximate cause of City's wrongful conduct, Moore, Burdette, James Johnson, Erica Johnson, Chappell, and Sykes have suffered and will continue to suffer damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seek the following relief from the Court:

a)  Declare that Defendants have violated the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983;

b)  Order that Plaintiffs be reinstated as candidates to become Cleveland Police Officers;

c)  Award Plaintiffs compensatory damages, punitive damages in amount to be determined at trial, prejudgment and post-judgment interest, reasonable attorneys' fees and costs; and

d)  Grant such other relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

/s/ *Eric W. Henry*
Eric W. Henry (0086750)
The Henry Law Firm
529 E. Washington St. Suite 240
Chagrin Falls, OH 44022
(440) 337-0083 P
(440) 337-0084 F
eric@erichenrylaw.com

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)
Sobel, Wade & Mapley, LLC
2460 Fairmount Blvd., Suite 314
Cleveland, Ohio 44106
T: (216) 223-7213
F: (216) 223-7213
sobel@swmlawfirm.com

Attorneys for Plaintiffs

19