UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------:
TATAYANA MOORE, *et al.*, : CASE NO. 1:18-CV-1849
:
Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Docs. 30, 34, 40, 43,
: 48]
THE CITY OF CLEVELAND, *et al.*, :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs, former police recruits at the Cleveland Police Academy, bring this suit under 42 U.S.C. § 1983 against the City of Cleveland and Cleveland Police Academy officers. Plaintiffs allege that Defendants—the City of Cleveland and several Cleveland police officers (the "City Defendants") and Academy head Shawn Smith—deprived them of their constitutional rights by ending their employment after an alleged plagiarism scheme. Some Plaintiffs also allege that their termination was racially discriminatory.

The Defendants move for judgment on the pleadings[1] and for summary judgment.[2] Plaintiffs separately move to strike two documents Defendants submitted in support of summary judgment.[3]

---

[1] Docs. 30, 34. Plaintiffs oppose. Doc. 36. Defendants reply, Docs. 37, 38.
[2] Docs. 40, 43. Plaintiffs oppose. Doc. 49. Defendants reply, Docs. 54, 59.
[3] Doc. 48. City Defendants oppose. Doc. 48. Defendant Smith opposes. Doc. 61. Plaintiffs reply. Doc. 63.

For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment.[4] The Court **DENIES** Plaintiffs' motion to strike.

## I. Background

### A. The 140th Cleveland Police Academy

Plaintiffs[5] were 140th Cleveland Police Academy recruits. The 140th Cleveland Police Academy began in February 2018. At the time, Defendant Sergeant Shawn Smith worked as recruiting class Officer in Charge. Defendant Officer George Kwan worked as an instructor at the academy. Defendant Michael McGrath acted as Cleveland Police Safety Director. Defendant Captain Matthew Gallagher worked as Officer in Charge of the Cleveland Division of Police Training Unit, which included the Academy.

The Academy mixed state and municipal functions. The City of Cleveland administered the Academy, Cleveland police officers served as instructors, and the City supplied some program facilities. Further, Cleveland employed the recruits while the recruits were in the Academy. Academy graduates would typically serve as Cleveland Police Officers after graduation. On the other hand, the Ohio peace officer training commission—a state-level body under the Ohio Attorney General[6]—sets the curriculum and minimum qualifications.[7] Further, the Executive Director of the Ohio peace officer training commission must certify that a trainee satisfactorily completed the training program to be eligible for Cleveland Police officer employment.

---

[4] The court construes Defendants' motions for judgment on the pleadings and for summary judgment as combined motions for summary judgment.
[5] Tatayana Moore, Daniel Perstin, Nicole Russell, Thomas McGervey, Jonathon Bellomy, Harry Sykes, and Erica Johnson.
[6] *See* O.R.C. § 109.71.
[7] *See* O.R.C. § 109.73.

Case No. 1:18-cv-1849
Gwin, J.

As part of their State-mandated curriculum, recruits needed complete "notebook" assignments, that the recruits would periodically submit for grading. The notebook entries typically had two different components. The entry would have a "narrative" section, where the recruit would describe the daily lesson material in their own words.[8] The entry would also include "Student Performance Objectives," short statements of State-mandated policing standards.[9]

The Student Performance Objectives would be displayed on PowerPoint slides during class sessions, and were sometimes also distributed on handouts or via email.[10] Recruits were expected to type the exact language of these Student Performance Objectives in their notebooks verbatim.[11] Defendant Smith testified that recruits were advised not to copy-and-paste these entries, because typing these Objectives was part of the memorization process.[12]

Sometime in 2018, Academy instructors began to suspect that recruits were copying each other's notebook entries.[13] The plagiarism allegations arose because several recruits' notebooks contained identical grammatical and typographical errors in their Student Performance Objectives.[14] While it would be normal for these sections to be identical, because recruits were supposed to reproduce the Objectives verbatim,[15] the identical

---

[8] Doc. 24-1 at 6.
[9] *Id.* at 4. For example, Objective number one says "List a peace officer's main goals," and the response states "[e]nforce laws, preserve the peace, and provide services."
[10] *Id.*
[11] *Id.* at 6.
[12] *Id.*
[13] *Id.* at 5.
[14] In a few cases, but not all, the instructors alleged that there were suspicious similarities in narrative portions.
[15] Doc. 24-1 at 6.

typographical errors suggested that some recruits had copied each other's work. Thinking that this copying reflected cheating, Sergeant Smith assigned Defendant Kwan to investigate.

Defendant Sergeant Smith told the recruit class that there was a plagiarism investigation and Smith collected the recruits' handbooks. He also told them to come forward if they had any information.[16] After reviewing the notebooks, Defendants Smith and Kwan concluded that fifteen recruits had improperly copied each other's work. Smith returned notebooks to cleared recruits and again encouraged recruits to come forward with information.[17] Smith decided that implicated recruits would not be permitted to sit for the final exam and would fail the Academy.

On or around August 6, 2018, Plaintiffs met with Sergeant Melissa Dawson, the officer who led the Cleveland Police Employee Assistance Unit. She informed them that the implicated recruits would not be permitted to sit for the Academy's August 16, 2018, final exam because they were being investigated for plagiarism.[18] Because passing the exam was a prerequisite for employment as Cleveland police officers, this decision would also cause their termination.[19]

### B.  Plaintiffs' Lawsuit and the Pre-Disciplinary Hearings

After learning that they would be held out of the final examination, eleven of the fifteen accused recruits sued on August 13, 2018.[20] With the lawsuit, the Plaintiffs sought a temporary restraining order to require Defendants to allow the Plaintiffs to sit for the

---

[16] *Id.* at 5.
[17] *Id.* A few recruits did come forward and admit copying each other's work.
[18] Doc. 1 at 6. Because Plaintiff's complaint was verified, the Court considers it on summary judgment.
[19] *Id.*
[20] *Id.* Four of the original plaintiffs later dismissed their claims voluntarily. *See* Doc. 39.

Case No. 1:18-cv-1849
Gwin, J.

August 16, 2018, exam.[21] The Court conducted a hearing on August 15, 2018 and denied Plaintiffs' motion.[22]

Between August 17, 2018 and August 23, 2018, the City conducted pre-disciplinary hearings. The hearing notices charged Plaintiffs with three rule violations. The first alleged that Plaintiffs plagiarized their notebook entries. The second alleged that Plaintiffs failed the Academy's notebook requirement. The third alleged that Plaintiffs were not truthful because they did not come forward and admit to plagiarism.[23]

Defendant McGrath presided over the proceedings and Defendant Gallagher represented the Division of Police.[24] At the hearings, Plaintiffs used legal representation.[25] Plaintiffs also had an opportunity to introduce evidence, speak on their own behalf, and cross-examine the investigating officers.[26]

After the hearings, the Officer McGrath found the charged recruits guilty of all three charges, except for Plaintiff Erica Johnson, who was found not guilty of the first specification, and Russell, who was found not guilty of the third. Plaintiffs were then

---

[21] Doc. 2.
[22] Doc. 6.
[23] Doc. 24-3.
[24] Doc. 24-1 at 2.
[25] At some of the hearings, Plaintiffs were also represented by counsel for the Cleveland policeman's union.
[26] Defendant Smith had a medical emergency during the second hearing and had to be taken to the hospital. After this incident, Defendant Kwan testified about the investigation. *See* Doc. 24-1 at 22.

Case No. 1:18-cv-1849
Gwin, J.

fired.[27] On September 17, the City announced that Plaintiffs had been terminated for cheating and identified Plaintiffs by name.[28]

Plaintiffs claim that Defendants' actions violated their procedural and substantive due process rights under the United States Constitution and the Ohio Constitution. Plaintiffs also allege the terminations violated Ohio anti-discrimination law. Defendants now move from summary judgment on all claims.

## II. Discussion

The Court grants summary where the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[29] The Court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party.[30]

### A. The Court Grants Defendants Summary Judgment on Plaintiffs' Due Process Property-Interest Claim

42 U.S.C. § 1983 gives a private right of action for Plaintiffs to sue for deprivation of constitutional rights. The Fourteenth Amendment of the United States Constitution prohibits a state from depriving "any person of life, liberty, or property, without due process of law."[31]

---

[27] Because Defendant Smith was arguably acting in his capacity as head of an Ohio-conducted training academy when he determined that Plaintiffs had plagiarized, the City Defendants and Defendant Smith differ in their account of who was ultimately responsible for Plaintiffs' termination. The City Defendants contend that Defendant Smith, acting in his Ohio state capacity, made the choice to hold the recruits out of the final exam. Because passing the exam was a precondition of the recruits' continued employment, this essentially sealed their fate. Defendant Smith, in contrast, argues that he had no decision-making authority regarding Plaintiffs' continued City employment. Because, as detailed below, Plaintiffs' constitutional rights were not violated, the Court does not need to resolve this finger-pointing issue.
[28] Doc. 49-1.
[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 320 (1986).
[30] *Scott v. Harris*, 550 U.S. 372, 378 (2007)
[31] U.S. Const. amend. XIV, § 2.

Case No. 1:18-cv-1849
Gwin, J.

Plaintiffs claim that they had a property interest in continued employment. They say that Defendants deprived them of this interest without due process because the disciplinary proceedings that led to their terminations were "predetermined" and procedurally unsound.

State law creates whatever property interests that procedural due process rights protect.[32] The Supreme Court has held that civil service employees whose position can only be terminated "for cause" have a property right in that job.[33] However, probationary employees do not have this interest under Ohio law.[34]

Plaintiffs argue that Cleveland Civil Service Commission Rule section 6.80(D) creates a property interest in their continued employment, because it provides that employees can only be discharged "for cause" after a one hundred and twenty-day probationary period.[35] Plaintiffs argue that they had a property interest in their continued employment at the time of their discharge because they had already worked beyond the 120-day period specified in Rule 6.80(D).

However, Civil Service Rule 6.81 qualifies Rule 6.80(D). Rule 6.81 says that "[n]o appointment or promotion shall be deemed finally made until the appointee has satisfactorily served his/her probationary period." Instead, it says that the appointing

---

[32] See *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law").
[33] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004).
[34] See *Walton v. Montgomery County Welfare Dep't*, 430 N.E.2d 930, 935 (Ohio 1982) ("[P]robationary civil service employment does not constitute a legitimate claim of entitlement to be accorded procedural due process under the Fourteenth Amendment.").
[35] Rule 6.80(d) provides that "If retained after the one hundred and twenty (120) day probationary period, all employees, including both regular and temporary, shall be discharged only for cause, or subject to layoff in accordance with Civil Service Rules."

Case No. 1:18-cv-1849
Gwin, J.

authority shall transmit a "statement of the appointee's service record" specifying whether the appointee's service was satisfactory. Thus, Rule 6.81 dictates that the recruits' probationary period did not end until the City had determined that their probationary service was satisfactory. Because Cleveland did not give the probationary satisfactory probationary service statement, Plaintiffs were probationary employees.

The Sixth Circuit considered a similar claim in *Curby v. Archon*.[36] There, an employee claimed that he had a property right to continued employment under a Ohio Revised Code § 737.17. That provision said his employment "shall be for a probationary period of six months' continuous service, and [no appointment] shall be finally made until the appointee has satisfactorily served his probationary period."[37] In *Curby*, the employee argued that he had a property right because he had completed the six month period, even though he was not finally appointed. The Sixth Circuit rejected this argument, holding that "a probationary employee who completes a probationary term but is not finally appointed has no reasonable expectation of continued employment."[38] Also true here.

Plaintiffs argue that *Curby* is not on point because Ohio Revised Code § 737.17 only applies to village employees. A distinction without a difference. While section 737.17 and the Cleveland Civil Service Rules apply to different employees, they implement the same probationary scheme—a mandatory fixed probationary period, after which the person's employment is subject to final approval by the appointing authority.[39]

---

[36] 216 F.3d 549 (6th Cir. 2000).
[37] *Id.* at 553
[38] *Id.* (quoting *Matulin v. Village of Lodi*, 862 F.2d 609, 616 (6th Cir.1988)).
[39] *State ex rel. Rose v. Ohio Dept. of Rehab. & Corr.*, 746 N.E.2d 1103 (Ohio 2001), which Plaintiffs cite in support of their argument, is not to the contrary. That decision clearly states that the Plaintiff "had no property interest in continued employment sufficient to warrant procedural due process protection because her appointment was not final until she *satisfactorily* completed her probationary period." *Id.* at 1108.

-8-

Case No. 1:18-cv-1849
Gwin, J.

Because Plaintiffs did not have a property interest in their probationary employment, their due process claim fails.

### B. The Court Grants Defendants Summary Judgment on Plaintiffs' Due Process Liberty-Interest Claim

Plaintiffs also claim that Defendants deprived them of their reputational liberty interest.[40] When a public employer disseminates false and defamatory information about a person in conjunction with that person's termination from employment,[41] the Due Process Clause gives the employee a right to a public name-clearing hearing.[42] This claim is often called as a "stigma-plus" claim, because it "alleges that the state's action both damaged his or her reputation (the stigma) and that it deprived [him or her] of a right previously held under state law (the plus)."[43] To succeed on this claim, Plaintiffs must satisfy five factors:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.... Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.[44]

Further, before suing, a plaintiff must request a name-clearing hearing and the defendant must deny that request.[45]

---

[40] *See Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989) ("[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment.").
[41] This claim does not require that the employee have a property interest in the job.
[42] *See Funasekera v. Irwin*, 551 F.3d 461, 471 (6th Cir. 2009) (because the purpose of a name-clearing hearing is to address the stigma caused by the public employer's dissemination of defamatory information, the name-clearing hearing must be "adequately publicized").
[43] *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (alterations in original) (internal quotation marks omitted).
[44] *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (alterations in original) (quoting *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir.2000)).
[45] *Id.* at 322 (explaining that because the due-process injury is the denial of a hearing, the government must deny a request for a hearing before brining suit).

Assuming, for the purposes of summary judgment, that the cheating charges were false, Plaintiffs satisfy the five-factor test. The City named Plaintiffs in a news report[46] accusing them of dishonesty, and this report was made as the City terminated Plaintiffs.[47]

However, Plaintiffs did not request a name-clearing hearing prior to bringing this suit. While a plaintiff does not need ask to for a "name-clearing hearing" in those exact words, the plaintiff's request must "sufficiently appraise" a defendant of his desire for a hearing.

Plaintiffs argue that they made this request in an August 12, 2018 letter to Cleveland Law Director Barbara Langhenry. In its third paragraph, the letter states:

> The remedy that we seek at this point in time is eminently reasonable: allow these recruits to take the exam on August 16, 2018. In the meantime, the City can be free to continue its investigation in what we expect will be a fair and thorough manner. Our clients will be forthright and cooperative to *help you clear their names*. Allow them the same due process of law you teach at the academy.[48]

This statement did not sufficiently apprise Defendants of Plaintiffs' desire for a name-clearing hearing. While the letter contains the words "clear their names," the sentence containing these words promises to cooperate in the *investigation*—not a hearing that would clear the recruits' names. Further, the reference to name-clearing appears in the context of a request for a different remedy—to allow the students to sit for the final training exam. Given this context, Plaintiffs did not sufficiently request a name-clearing hearing.

---

[46] Doc. 49-1 at 1.
[47] When considering whether Plaintiffs were deprived of their liberty interest in their reputation, the Court does not consider whether they had a property interest in the job from which they were terminated.
[48] Doc. 49-2 at 1.

Case No. 1:18-cv-1849
Gwin, J.

Thus, the Court grants Defendant's summary judgment motion on Plaintiff's liberty-interest claims.

Because the Court finds that there was no violation of Plaintiffs' property or liberty interests, it does not address Defendants' arguments that Plaintiffs received adequate process before termination. For the same reason, the Court does not need to reach Defendants' arguments that Plaintiffs failed to timely serve certain Defendants, failed to exhaust their grievance procedures under their collective bargaining amendment, that Defendants are entitled to qualified immunity, and that the City is immune under *Monell v. New York City Department of Social Services*.[49]

### C. The Court Grants Defendants Summary Judgment on Plaintiffs' Substantive Due Process Claim

Plaintiffs also argue that Defendants violated their constitutional substantive due process rights. The Due Process Clause protects citizens' right "not to be subjected to arbitrary and capricious government action that shocks the conscience and violates the decencies of civilized conduct."[50]

Plaintiffs claim that there is a genuine dispute whether Defendants' conduct "shocks the conscience" because "Defendants publicly charged Plaintiffs with damning and shameful offenses, tarnished their reputations and ended their careers in law enforcement, and summarily terminated them after a sham hearing."[51]

Defendants argue that this claim fails because Plaintiffs have failed to show deprivation of a predicate liberty or property interest.

---

[49] 436 U.S. 658 (1978).
[50] *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (internal quotation marks omitted).
[51] Doc. 49 at 10.

-11-

Case No. 1:18-cv-1849
Gwin, J.

The Sixth Circuit case law on this point is ambiguous. Some decisions have required plaintiffs to show that the arbitrary government action deprived them of an underlying constitutional right,[52] while other Sixth Circuit opinions have held that government action can independently "shock the conscience" without injuring another constitutional right.[53]

While the picture is murky, the apparent rule is that plaintiffs must demonstrate a predicate constitutional property or liberty deprivation when they are challenging discretionary official conduct.[54] Because Plaintiffs are challenging Defendants' discretionary termination, and have not shown deprivation of a constitutionally recognized property right, their shock-the-conscience claim fails.

Plaintiffs' liberty interest claim also fails. The Sixth Circuit has held that this reputational interest underlying a "stigma-plus" due process claim cannot serve as the predicate for a substantive due process claim.[55]

---

[52] *See, e.g., Triomphe Inv'rs v. City of Northwood*, 49 F.3d 198, 204 (6th Cir. 1995) (dismissing substantive due process claim because plaintiff "failed to show a violation of a constitutionally-protected property interest"); *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest.").

[53] *See Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) ("Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that "shock the conscience");

[54] *See Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011) ("[A] plaintiff must demonstrate a deprivation of a constitutionally protected liberty or property interest in order to establish a due process violation based on discretionary conduct of government officials

[55] *Doe*, 490 F.3d at 502 (holding that trial court erred by applying stigma-plus test to substantive due process claim).

-12-

Case No. 1:18-cv-1849
Gwin, J.

> D. The Court Grants Defendants Summary Judgment on Plaintiffs' State-law Racial Discrimination Claims

Some Plaintiffs, who are African-American,[56] allege that Defendant City of Cleveland terminated them on the basis of their race, in violation of Ohio Revised Code § 4112.02(A).

Ohio courts interpreting section 4112.02 have adopted the burden-shifting framework from the Supreme Court's Title VII decision in *McDonnell Douglas v. Greene*. To make a *prima facie* claim, Plaintiffs must show that 1) they were a member of a protected group; 2) subject to an adverse employment decision; 3) qualified for the position; and 4) treated differently from similarly-situated members of the unprotected class.[57]

Plaintiffs argue that there is a material dispute regarding the fourth prong because a disproportionate number of African-American recruits were implicated in the plagiarism scandal. There were 65 recruits in the Academy, 15 of which were African-American. Ten of the fifteen African-American recruits were implicated in cheating and dismissed. Plaintiff argues that these disproportionate numbers create a material dispute whether Defendants targeted these Plaintiffs because of their race.

Plaintiffs' argument fails because the inquiry under the fourth prong is whether *similarly situated* members of the unprotected class were treated differently. To be similarly situated, employees typically "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating

---
[56] Plaintiffs Burdette, Erica Johnson, Moore and Sykes.
[57] *Holbrook v. LexisNexis*, 169 Ohio. App.3d 345, 351 (Ohio Ct. App. 2006).

-13-

Case No. 1:18-cv-1849
Gwin, J.

or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[58]

For this reason, the Court asks whether the African-American recruits implicated in plagiarism were treated similarly. It does not look to the recruit class as a whole, because there is no suggestion that they were similarly situated.

Here, ten of the fifteen discharged recruits were African-American. All the fifteen discharged recruits were similarly situated in all relevant respects—they had the same position, they were supervised by Defendant Smith, they were accused of the same misconduct, they received the same process, and they were all were terminated. There are no facts suggesting that the African-American Plaintiffs were treated differently from their similarly-situated non-African-American peers.

### E. Plaintiffs Cannot Pursue Due-Process Claims Under the Ohio Constitution

Count One of Plaintiffs' amended complaint alleges that Defendants deprived them of their due process rights under the Ohio Constitution. However, section 1983 does not authorize suits for violation of state constitutional law,[59] and Ohio law does not authorize private suits for violations of the Ohio Constitution.[60] Thus, Defendants receive summary judgment on any claim that Defendants' actions violated the Ohio Constitution.

---

[58] *Id.* at 351-52.
[59] 42 U.S.C. § 1983 authorizes plaintiffs to bring suit for "deprivation of any rights, privileges, or immunites secured by the Constitution and laws."
[60] *PDU, Inc. v. City of Cleveland*, 2003-Ohio-3671, ¶ 27 (Ohio Ct. App. 2003) ("[U]nlike the federal system where 42 U.S.C. § 1983 creates a private cause of action to remedy violations of the United States Constitution, there exists no statute in Ohio analogous to Section 1983.").

-14-

Case No. 1:18-cv-1849
Gwin, J.

### F. The Court Denies Plaintiffs' Motion to Strike

Plaintiffs move to strike two affidavits submitted by Michael Spreng[61] in support of Defendants' summary judgment motion. These affidavits include the Cleveland Civil Service Commission job posting for the Academy, which stated that applicants waived Civil Service Rule 6.80.[62] Plaintiffs argue that these affidavits should be struck because Spreng and the documents were not timely disclosed.

Because the Court finds that Plaintiffs lacked a property interest in their employment, even if Rule 6.80 applied, the Court denies Plaintiffs' motion as moot.

### G. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment. The Court **DENIES** Plaintiffs' motion to strike.

IT IS SO ORDERED.

Dated: May 21, 2019                            *s/    James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[61] Docs. 40-9 and 43-1.
[62] Doc. 40-9 at 7.